# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SET SHAHBABIAN, M.D., | Case No. 1:18-cv-790 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| TRIHEALTH, INC., et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

A year ago, Plaintiff Set Shahbabian, M.D., filed suit against Defendants TriHealth, Inc., Trihealth G, LLC doing business as TriHealth Physician Partners (jointly referenced as "TriHealth"), and Mayfield Clinic, Inc. ("Mayfield"). The case has been referred to the undersigned magistrate judge for ruling on all non-dispositive motions, and for a report and recommendation on any dispositive matters. (Doc. 3). Presently pending and ripe for disposition are three discovery-related motions: (1) Mayfield's motion to quash and for a protective order, (Doc. 74); (2) Plaintiff's Motion to Compel discovery from Navigant and from Sullivan Cotter & Associates; and (3) TriHealth's motion to quash the third-party subpoenas served upon Navigant and Sullivan Cotter & Associates. Plaintiff recently filed two additional motions to compel discovery from one of TriHealth's law firms and its attorney, but those motions are not yet ripe.[1]

---

[1] It appears that a subpoena was issued to the law firm seeks the same information that has been compelled by this Order. Without pre-judging the issue presented here prior to full briefing (should Plaintiff continue to seek to compel compliance with the subpoena), the undersigned notes that the issuance of subpoenas to a party's law firm and/or attorney is highly unusual.

**I.     Background**

Discovery in this case has been extremely contentious, and the parties have enlisted the Court's assistance in multiple telephonic conferences prior to filing the current set of motions.  Fact discovery is scheduled to conclude by December 2, 2019, with a dispositive motion deadline of January 10, 2020.  In lieu of setting forth a more complete background, the undersigned incorporates by reference the Background set forth in the Memorandum Opinion and Order filed on October 8, 2019, which addressed a closely related informal discovery dispute.[2] (Doc. 78).

A primary issue in dispute is the scope of discoverable documents relating to "fair market value" ("FMV") determinations.  Plaintiff's employment contract explicitly states that his compensation must not exceed FMV.  (Doc. 21-1 at 19).  That contractual term arises from federal laws (the Stark Act and the Anti-kickback law) that impose limitations on physician compensation relative to FMV, with FMV compensation often expressed as a salary range.  The FMV determinations were made by accounting and valuation consultants at the request of either corporate general counsel and/or outside counsel for TriHealth.[3]

Plaintiff's contracted salary is based upon a work relative value unit ("wRVU"). The calculation of the wRVU requirement was based, at least in part, upon regulatory FMV standards.  Plaintiff alleges that he was fraudulently induced to agree to the wRVU

---

[2] The undersigned filed a written order following an informal discovery conference, and the *in camera* review of some documents, in the hopes of avoiding further written motions on the same issue.  Regrettably, that hope was unfulfilled.

[3] Plaintiff points to some evidence that suggests that Navigant may have been directly engaged by TriHealth as opposed to counsel for TriHealth.  The undersigned finds the dispute to be immaterial.  In the context of the record presented, the underlying data and analyses regarding the FMV analysis from the business consultants (whether communicated directly to TriHealth's counsel or to TriHealth directly) from Navigant and Sullivan Cotter should be produced.

requirement. It is undisputed that Plaintiff's wRVUs declined over time. Although the reasons for that decline remain at the heart of this lawsuit, TriHealth has filed a counterclaim relating to the decline in Plaintiff's wRVUs. In its counterclaim, TriHealth invokes a claw-back provision that TriHealth asserts entitles it to reimbursement of more than $679,000 paid in salary to Plaintiff based upon the reduction of his wRVUs. (*See* Doc. 51).

Plaintiff argues that because the foundation of the contractual wRVU requirement rests on TriHealth's FMV analysis, and because TriHealth takes the position that a failure of Plaintiff to reimburse TriHealth for the reduced wRVUs would result in Plaintiff's salary exceeding FMV in violation of federal law, Plaintiff is entitled to discovery of the underlying FMV-related documents. In the October Order, the undersigned wrote that "TriHealth does not dispute that the FMV valuation is highly relevant to Plaintiff's breach of contract claim, as well as to TriHealth's affirmative defense and counterclaim." (Doc. 78 at 11, PageID 526). In addition to the FMV documents relating to his own compensation, Plaintiff seeks similar FMV-related documents concerning the Co-Management Agreement between TriHealth and Mayfield, which (according to Plaintiff) led to the reduction of Plaintiff's wRVUs. Plaintiff initially sought those documents directly from Defendant TriHealth, but subsequently issued subpoenas to two business consultants used by TriHealth to provide FMV analyses.

## II. Analysis of Pending Motions

### A. Motion to Quash/Motion to Compel documents from Navigant Consulting, Inc. and Sullivan, Cotter & Associates, Inc.

In addition to seeking FMV documents directly from TriHealth, Plaintiff has sought the documents from two business consultants employed directly or indirectly by TriHealth

3

to help determine FMV physician compensation. Plaintiff issued a subpoena to Navigant on August 13, 2019, seeking numerous documents relating to FMV determinations made by a physician compensation group that was headed up by a non-lawyer consultant, Patty Bohney. Ms. Bohney and her team subsequently left Navigant and began working for another business consulting group, Sullivan Cotter & Associates, Inc., taking the TriHealth FMV records with them. Plaintiff later issued a subpoena to Sullivan Cotter, seeking the same FMV-related documents.

Previously, TriHealth refused to produce any FMV records, arguing that all such records were subject to an attorney-client privilege. Upon receipt of the respective subpoenas, the attorneys for Navigant and Sullivan Cotter similarly objected to production based upon their client's assertion of the same attorney-client privilege. Plaintiff has now moved to compel Navigant and Sullivan Cotter to produce the documents, while TriHealth has filed a separate motion to quash the third-party subpoenas. For the reasons discussed below, the undersigned will compel Navigant and Sullivan Cotter to produce documents responsive to the subpoenas and will deny TriHealth's motion to quash.

In the October 8, 2019 Order, the undersigned pointed out that the party asserting the privilege bears the burden to prove its application, and that claims of attorney-client privilege will be narrowly construed because they "reduce[] the amount of information discoverable during the course of a lawsuit." *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir.1985) (quoting *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883 (1964)). Thus, courts apply the privilege "only when 'necessary to achieve its purpose' and only to protect legal disclosures that 'might not have been made absent the privilege.'" *Cooey v. Strickland*,

269 F.R.D. 643, 648 (S.D. Ohio 2010) (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569 (1976)).

TriHealth insists that all FMV-related documents are subject to attorney-client privilege because both Navigant and Sullivan were agents of TriHealth, engaged by TriHealth's counsel in order to provide legal advice. "The privilege applies to factual investigations conducted by counsel at a corporate client's request (to provide legal advice to that client), and also to agents of an attorney who are assisting in rendering legal advice to the client." *In re Behr Dayton Thermal Products, LLC*, 298 F.R.D. 369, 373 (S.D. Ohio 2013) (internal citation omitted). However, as the October Order explained:

> To assess whether the privilege applies in any given situation, the Sixth Circuit has instructed courts to review the following criteria:
>
>> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) unless the protection is waived.
>
> *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (additional citation omitted).
>
> No matter what, in order to be privileged, "communications between non-attorney corporate employees must be made in order to secure legal advice from counsel." *Upjohn Co. v. United States*, 449 U.S. 383, 394, (1981). Thus, to establish that a document is protected under the attorney-client privilege, Defendants must prove that the "dominant intent" of the communication was to secure "legal advice from [a] lawyer." *See Behr Dayton Thermal Prod.'s, LLC*, 298 F.R.D. at 375 (quoting *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2010 WL 5014483, *2 (S.D. Ohio 2010)).

(Doc. 78 at 5, PageID 520)

The October Order also stated: "The fact that the underlying accounting and valuation data was shared with counsel for use in the contract negotiations does not alone create a privilege for the data." (*Id.* at 12, PageID 527). Ultimately, after determining that

the FMV determinations were relevant, the October Order held that the "underlying factual valuation consulting data and correspondence concerning FMV determinations from Navigant and/or Chartis are not subject to the attorney-client privilege" and should be produced. (*Id.* at PageID 529). In reaching this conclusion, the undersigned emphasized that the privilege "only precludes disclosure of communications between attorney and client and does not protect against disclosure of the facts underlying the communication." (*Id.* at PageID 528, quoting *Humphreys*, 755 at 1219, additional internal citations omitted). The prior Order noted that "the fact of legal consultation or employment, clients' identities, attorney's fees, and the scope and nature of employment" are "in general" not privileged communications. (*Id.*)

In drawing the conclusion that the underlying documents reflecting FMV valuations that were performed and generated by the business consultants are not privileged, the undersigned acknowledged that the "FMV determinations were made by non-attorney accounting and valuation consultants" at the request of in-house and/or outside counsel. However, the Court rejected, as overbroad, TriHealth's blanket assertion that the involvement of counsel in requesting and collecting the accounting data, combined with consideration of federal regulatory laws like the Stark law, could "transform any assessment of a physician's FMV from a strictly contractual matter involving business considerations into 'a legal question with significant ramifications for healthcare providers.'" (*Id.* at PageID 523).

The undersigned also discussed and specifically *rejected* the application of the legal authorities relied upon by TriHealth in support of its assertion of privilege, including a June 2001 OIG bulletin and an unpublished decision from this Court:

6

> In support of its assertion that any and all documents …relating in any manner to FMV physician compensation issues… are shielded from discovery by the cloak of attorney-client privilege, TriHealth cites *Graff v. Haverhill North Coke Co.*, Case No. 1:09-cv-670, 2012 WL 5495514 at **9-10 (S.D. Ohio Nov. 13, 2012). In that case, Magistrate Judge Litkovitz was called upon to determine whether attorney client privilege could be claimed for an environmental consulting report. Judge Litkovitz held that because a memo directed in-house counsel "to obtain an [environmental] audit and provide legal advice on [Defendant's] compliance with regulatory matters," the record clearly established that the audit "was obtained by SunCoke for the express purposes of assisting its counsel in providing legal advice on environmental compliance matters" and thus was fully protected by the asserted attorney-client privilege. Applying *Graff* broadly, TriHealth could claim attorney-client privilege for any documentation from any type of consultant, so long as the consultant was engaged by or provided information to an attorney (whether corporate or outside counsel), and as long as counsel was retained (at least in part) to assist with regulatory compliance. Given the varied business and regulatory purposes of FMV analysis of physician compensation in the highly regulated industry of healthcare, the undersigned must respectfully disagree with the breadth of the *Graff* analysis in this particular context. Such a broad reading of *Graff* also runs counter to the basic principle that privileges should be construed narrowly, and that much of the underlying accounting "factual" data is not privileged.

(Doc. 78 at 10-11, PageID 525-526). TriHealth's current motion to quash, filed after the Court's last order, continues to rely chiefly upon *Graff* to support its position that all of the documents relating to FMV remain subject to attorney-client privilege. For the reasons previously stated, the undersigned rejects the broad application of *Graff* to the documents at issue.

One of the main reasons that the October order did not order the immediate production of all documents relating to the FMV analyses that were submitted *in camera* was because, at that point, TriHealth had not produced so much as a privilege log by which the Court could sufficiently determine whether there might yet be *some* privileged documents among the entire body of records submitted to the Court. Additionally, the Court recognized upon its initial review that some of the documents contained highly

7

sensitive and confidential data that might be subject to the parties' existing protective order.[4]

Unfortunately, the Court's suggestion that some of the documents "may" be yet subject to privilege appears to have been misinterpreted by TriHealth as carte blanche to once again claim attorney-client privilege applies to most if not all of the subject documents. TriHealth states that it retained Ms. Catherine Dunlay at Bricker & Eckler to advise TriHealth on regulatory-compliance matters and physician compensation issues in the course of its review of the TriHealth Orthopedic & Sports Institute ("TOSI") and in the larger context of negotiating TriHealth's Co-Management Agreement with Mayfield. In turn, Ms. Dunlay hired Navigant consultants to provide her with FMV analyses relating to both TOSI (of which Plaintiff was a part) and the Co-Management Agreement.[5] The same analysts later left Navigant to work for a different consulting firm, Sullivan Cotter, taking the TriHealth's FMV records with them.[6] Later, after the group of consultants had begun working for Sullivan Cotter, Ms. Dunlay engaged Sullivan Cotter to provide additional FMV data and data analysis for TriHealth. TriHealth argues that because Ms. Dunlay provided legal advice to TriHealth concerning compliance issues with federal laws concerning FMV physician compensation and retained Navigant – and later Sullivan

---

[4] TriHealth argues in opposition to the motion to compel that its consultants' "underlying data and data-analysis methods" relating to the FMV analysis are "protected trade secrets." (Doc. 89). The undersigned does not disagree, but that is precisely the type of information that can be addressed by an appropriate confidentiality agreement. If the parties' existing protective order is insufficient, then the non-parties are free to enter into a separate agreement.
To the extent that an addendum or a separate agreement is required beyond the existing protective order entered into in this case, the non-parties will be permitted a brief period of additional time in which to comply with this Order.
[5] Ms. Dunlay has provided an affidavit to the same effect.
[6] The ability of the analysts to take the underlying FMV documents with them to their new employer, during a period of time when they were not retained by TriHealth, suggests a possible waiver. However, the issue of waiver arises only if a privilege is first established. Here, the undersigned has concluded that no privilege exists for the underlying factual data and analyses, as opposed to the legal advice and conclusions that counsel may have drawn from that data.

8

Cotter - to assist her with the data and data analysis, that all FMV records are protected by the attorney-client privilege.

At the same time, TriHealth acknowledges that it and its consultants are aware of the Court's prior October 8 Order in which the undersigned clearly stated that TriHealth should produce underlying "factual valuation consulting data and correspondence concerning FMV determinations from Navigant and/or Chartis," which conclusion would apply equally to FMV analyses provided by Sullivan Cotter. TriHealth therefore requests that, to the extent that the Court would continue to order its consultants to produce "any factual valuation consulting data and correspondence" concerning FMV determinations, that this Court "modify the subpoena to exclude data [previously] produced by TriHealth under that Order." (Doc. 89 at 7). Essentially, TriHealth seeks the modification in order to "avoid undue burden to [the consultants] as nonparties to this dispute by limiting their production to nonduplicative materials." (*Id.*) In light of the length of time that this ongoing dispute has taken to date notwithstanding what was intended to be clear direction in the Court's October Order, the minimal cost of producing the "duplicative" materials and the rapidly approaching discovery deadline, the Court declines to modify the subpoenas as requested.

In addition to its reliance on arguments previously rejected by the undersigned, TriHealth complains that Plaintiff's expansive discovery requests in this case are intended for an improper purpose; chiefly, in order to garner evidence in a separate lawsuit that Plaintiff either already has filed under seal, or that Plaintiff's counsel intends to file against TriHealth under the False Claims Act.[7] It is true, as the undersigned recognized in its

---

[7] Plaintiff's counsel has neither confirmed nor denied that he may be involved in a present or future FCA case.

October Order, that FMV valuations are often particularly relevant for FCA claims. TriHealth maintains that the Plaintiff is using this case as a "fishing expedition" to develop counsel's intended claims in the (anticipated) FCA case. At the end of the day, however, TriHealth previously did not dispute the undersigned's conclusion that the FMV documents remain relevant to the claims presented in *this* case.

But wait, says TriHealth. In its reply memorandum in support of its motion to quash, TriHealth now argues for the first time that the FMV analyses is "not raised or implicated in TriHealth's Counterclaim" and is not "relevant or necessary to the mechanical application of the plain language of Plaintiff's Employment Agreement." (Doc. 86 at 4, PageID 706). In other words, TriHealth offers new argument that the requested data is not relevant to either the Plaintiff's claims or the counterclaim after all, and that this Court should quash the subpoenas on that basis.

This argument is too little, too late. The undersigned has now conducted multiple telephonic conferences concerning this issue and considered informal briefing prior to the present slew of written motions. Up until now, TriHealth relied chiefly on attorney-client privilege and did not object on grounds of relevancy. Indeed, the October 8 Order pointed out that TriHealth had not objected on relevancy grounds. And even now, TriHealth concedes that Plaintiff is likely to argue that the Agreement was breached by TriHealth and was fraudulently induced, and to that extent that Plaintiff may yet contend that the FMV information is relevant. (*Id.*) Discovery is intended to be broad; the undersigned declines to revisit the Court's prior conclusion that the subject documents are relevant to the claims at issue.

In Plaintiff's response in opposition to TriHealth's motion to quash the subpoenas, Plaintiff also points out that the first date on TriHealth's long-awaited privilege log is April 30, 2015. The undersigned agrees that, based upon the failure of TriHealth to identify any earlier-dated privileged documents, Navigant and Sullivan Cotter should produce any responsive FMV documents that are dated prior to April 30, 2015 and that relate to Plaintiff's 2014 contract and subsequent amendments, as well as those in the same date range that relate to the Mayfield/TriHealth's 2014 Co-Management agreement, as amended. The Court further agrees that FMV-related documents generated from Chartis between March and October 2016 are subject to disclosure. The prior Order recognized as much, and TriHealth's brief additional argument in its reply memorandum, that the Chartis communications should somehow be deemed to be the functional equivalent of legal advice, is unpersuasive.

**B. Motion to Quash the Subpoena Issued to Scroggins Grear, Inc.**

On September 25, 2019, Defendant Mayfield Clinic, Inc. filed a motion to quash a subpoena issued by Plaintiff to Scroggins Grear, Inc., Mayfield's accounting firm. In the subpoena, Plaintiff seeks Mayfield's tax records, which he maintains will reflect additional revenue obtained by Mayfield from the transfer of Plaintiff's surgical practice to Mayfield. Mayfield strongly objects to Plaintiff obtaining private, confidential compensation information relating to its corporate officers, which information is included in the referenced tax returns. Therefore, Mayfield seeks either to completely quash the subpoena, or alternatively, an order directing Scroggins to provide the requested documents with the private, confidential compensation data (and social security numbers) of Mayfield's corporate officers to be redacted.

Plaintiff has filed no written response to Mayfield's motion. The undersigned will grant the relief requested.

**III. Conclusion and Order**

Accordingly**, IT IS ORDERED**:

1. Mayfield's motion to quash and for a protective order (Doc. 74) is **GRANTED**, with the subpoena issued to Scroggins Grear, Inc. to be quashed insofar as Plaintiff seeks confidential compensation information relating to its corporate officers;

2. TriHealth's motion to quash (Doc. 80) is **DENIED**;

3. Plaintiff's motion to compel the production of additional documents from Navigant and Sullivan Cotter (Doc. 79) is **GRANTED**, with all underlying factual valuation consulting data and analyses concerning FMV determinations generated by or communicated from those consultants to be provided on or before December 12, 2019;

    a. Navigant and Sullivan Cotter additionally shall produce any responsive FMV documents that are dated prior to April 30, 2015 and that relate to Plaintiff's 2014 contract and subsequent amendments, as well as those in the same date range that relate to the Mayfield/TriHealth's 2014 Co-Management agreement, as amended;

    b. Pursuant to the October 8, 2019 Order, FMV data and analyses generated by Chartis between March and October 2016 likewise are subject to disclosure.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge