**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SET SHAHBABIAN, M.D.,                                  Case No. 1:18-cv-790

    Plaintiff,                                               McFarland, J.
                                                        Bowman, M.J.

       v.

TRIHEALTH, INC., et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Set Shahbabian, M.D., filed an employment discrimination suit against Defendants TriHealth, Inc., Trihealth G, LLC doing business as TriHealth Physician Partners (jointly referenced as "TriHealth"), and Mayfield Clinic, Inc. ("Mayfield"). The case has been referred to the undersigned magistrate judge for ruling on all non-dispositive motions, and for a report and recommendation on any dispositive matters. (Doc. 3).[1] By Order filed December 9, 2019, the deadline for the completion of fact discovery was extended to January 17, 2020, and the dispositive motion deadline was extended to February 28, 2020. (Doc. 105).

## I.     Background

In his complaint, as amended, Plaintiff alleges that Defendant TriHealth discriminated against him based upon his age and conspired with Defendant Mayfield "to fraudulently destroy the medical practice of a pre-eminent and long standing physician." (Doc. 21, Amended Complaint at 1). Plaintiff generally alleges that he practiced as a solo

---

[1]U.S. District Judge Dlott filed the referral order. In the absence of any superseding order, the transfer of the case to U.S. District Judge McFarland does not impact that referral.

neurosurgeon on the west side of Cincinnati. When he was approximately 70 years old, Plaintiff and TriHealth LLC signed a five-year Employment Agreement that began on May 1, 2014 and ended (due to TriHealth's failure to renew the contract) on May 1, 2019. (*Id.* at ¶¶11-12). Plaintiff alleges that shortly after he entered the employment contract, TriHealth and Mayfield conspired to eliminate Plaintiff's neurosurgery practice by alleging that he was too old to perform surgery, and by falsely raising quality issues concerning his surgical competency. (*Id.* at 5-6). Plaintiff further alleges that TriHealth wrongfully directed new neurosurgery patients to Mayfield instead of Plaintiff, "deceitfully" limited his neurosurgical privileges, required him to consult with Mayfield physicians before performing surgery, and "deceptively" claimed that he had experienced surgical complications in order to transition Plaintiff's surgical practice to Mayfield. (*See generally*, *id.* at 8-12).

Plaintiff's amended complaint sets forth a dozen claims: breach of contract against TriHealth (Count I), federal age discrimination and retaliation under the ADEA against TriHealth (Counts II and III), related state law age discrimination and retaliation claims against TriHealth (Counts IV-VI), a state law "aiding and abetting " claim against all Defendants (Count VII), common law fraud against TriHealth (Count VIII), a tortious interference with his employment contract claim against Mayfield (Count IX), a common law civil conspiracy claim against all Defendants (Count X), a federal disability discrimination claim under the ADA against TriHealth (Count XI), and a related "handicap discrimination" claim under state law (Count XII). Plaintiff seeks monetary damages in excess of sixty million dollars. (*Id.* at 31). TriHealth and Mayfield filed answers that assert numerous affirmative defenses. (Docs. 23, 24). In addition to its affirmative defenses,

TriHealth's answer includes a counterclaim seeking a declaratory judgment that the parties' Employment Agreement "is valid and enforceable and that pursuant to the Agreement, Shahbabian is obligated to reimburse TriHealth for any overpayment he received during his employment with TriHealth…." (Doc. 24 at 13). As of February 28, 2018, TriHealth G, LLC alleges that Shahbabian owed his employer the sum of $605,254.57, which he is required to repay upon his separation from TriHealth G, LLC for any reason. (*Id*. at 15).

Discovery has been exceptionally contentious, with the undersigned having conducted seven lengthy "informal" discovery conferences, one of which required *in camera* review of a significant cache of documents. Multiple Memorandum Opinions and Orders have been filed in an attempt to resolve discovery disputes that required formal briefing. In a prior such Order filed on December 2, the undersigned ruled upon three discovery motions: (1) Mayfield's motion to quash and for a protective order; (2) Plaintiff's Motion to Compel discovery from Navigant and from Sullivan Cotter & Associates; and (3) TriHealth's motion to quash the third-party subpoenas served upon Navigant and Sullivan Cotter & Associates. In the relatively short time since that ruling, the parties have filed <u>seven</u> additional substantive motions. Five motions are fully briefed, including two motions to compel filed by Plaintiff against TriHealth's law firm and attorney, (Docs. 92, 96), two motions relating to Plaintiff's attempt to depose TriHealth witnesses pursuant to Fed. R. Civ. P. 30(b)(6), (Docs. 97, 99), and a fifth motion by TriHealth to compel additional written discovery responses from Plaintiff. (Doc. 101). Though not yet ripe, additional motions to compel filed by both parties on January 17, (Docs. 121-122), are also addressed in this Order.

The acrimony on display between opposing counsel in this case and indifference to resolving their numerous discovery disputes through extrajudicial means have severely taxed this Court's time and resources, as well as (one would presume) the resources of the parties. By way of example, the briefs alone for pending motions (including the motions as to which briefing has yet to conclude) total 206 pages, with the attached exhibits adding more than 2,500 pages to that total. Needless to say, the resources necessary for the undersigned to carefully review each argument and all accompanying exhibits, 2,741 pages in all, requires a significant expenditure of time. If this were the only case pending before the undersigned, this Memorandum Opinion and Order *might* undertake to explain at greater length the Court's full analysis of each referenced argument and exhibit. However, this is neither the only case pending, nor one that deserves such an overuse of scarce judicial resources for purposes of the pending discovery disputes.

Ordinarily, the parties herein would not have been permitted to engage in the referenced motion practice. In fact, the undersigned's standing order prohibits the filing of any discovery motion without first seeking an informal discovery conference. Only after counsel sought multiple telephonic conferences, and the undersigned determined that certain issues required some briefing, did the undersigned enter a notational order on October 29, 2019 in which the parties were granted leave to file written motions if necessary without first seeking additional telephonic conferences. (Minute Entry stating: "Parties to exhaust all efforts to resolve continuing disputes but if unsuccessful either side may file motions to compel without further leave of Court.") The number and volume of

discovery motions filed since that order requires the undersigned to vacate that previously granted permission.

## II. Analysis

### A. Plaintiff's Motions to Compel the Deposition of Attorney Dunlay and the Production of Documents from Bricker & Eckler, and Recent Motion to Compel Documents from Third Parties

Two of Plaintiff's fully briefed motions to compel seek additional discovery relating to "fair market value" ("FMV") determinations, as does a third motion to compel filed on January 17. The Court will deny the first two motions and strike the third at this time.

An exhibit to Plaintiff's employment contract includes a short "catchall" sentence on compensation that states: "Notwithstanding any other provision of this Agreement, …the compensation the Company pays to Physician must not exceed fair market value." (Doc. 21-1 at 19). It is undisputed that the referenced term arises from federal laws (the Stark Act and the Anti-kickback law) that impose limitations on physician compensation relative to FMV, with FMV compensation often expressed as a salary range. The underlying FMV determinations that resulted in the approval of Plaintiff's contracted salary of $968,000 were made by accounting and valuation consultants at the request of either corporate general counsel and/or outside counsel for TriHealth, including Attorney Dunlay, a former partner with the Taft law firm who currently practices with Bricker and Eckler.

Plaintiff's motions seek additional FMV documents directly from Bricker and Eckler and seek to depose Ms. Dunlay, as the attorney responsible for providing a combination of legal and business advice concerning the FMV valuations. With respect to the deposition of Ms. Dunlay, Plaintiff asserts that he wants to "test" sworn statements made

by her in an October 14, 2019 declaration to this Court concerning the scope of her legal representation, including her "relationship with" consultants and with TriHealth, her "communications" with all entities (including her client) regarding 2014 and 2017 agreements and FMV determinations, and "any other relevant issues."

TriHealth argues that "[t]he legitimacy of the quality-of-care issues is the gravamen of the Complaint pending before this Court, not Fair Market Value or the Stark Act or whether other doctors' compensation was subject to reconciliation" or - as Plaintiff puts it - "claw-back" for alleged overpayments. (Doc. 112 at 6). The undersigned agrees that Fair Market Valuations are not at the core of this single-plaintiff employment discrimination case. At the same time, an October 2019 Order concluded that some FMV information is relevant:

> Plaintiff argues, and TriHealth does not dispute, that TriHealth's counterclaim is based in part upon TriHealth's assertion that the decrease in Plaintiff's wRVU contractual performance required Plaintiff to reimburse TriHealth because otherwise his compensation would be above FMV and in violation of the Stark Act. In other words, TriHealth's counterclaim rests in part upon its assessment of FMV and consequences that flow from the contractual arrangement under federal law.

(Doc. 78 at 7, emphasis added). Plaintiff argued that FMV information was relevant based upon TriHealth's affirmative defense that Plaintiff's claims are barred under the doctrine of illegality. (Doc. 24 at ¶ 155). At the time the dispute arose, the undersigned accepted that argument. (*See* Doc. 78 at 11, "[I]t is worth repeating that TriHealth does not dispute that the FMV valuation is highly relevant to Plaintiff's breach of contract claim, as well as to TriHealth's affirmative defense and counterclaim.").

In addition to the (initially) undisputed relevancy, the Court held that the FMV information was not subject to privilege because TriHealth, as the party asserting the

privilege, had failed to carry its burden of proof. "[T]he undersigned cannot agree that the primary purpose and/or dominant intent of all referenced documents was to seek legal advice." (Doc. 78 at 12, emphasis original). TriHealth had submitted a large number of documents for the Court to review *in camera* but had described the documents only in broad categories, without providing any systematic reference to Bates numbers or other method to discern which documents were alleged to belong to which category. In addition, TriHealth initially failed to provide so much as a privilege log to assist the Court in determining the applicability of the asserted privilege. (*See id.* at 13, concluding "that TriHealth has failed to satisfy its burden of proving that the entire body of documents submitted *in camera* are subject to the asserted attorney-client privilege."). In a subsequent December 2, 2019 Order, the undersigned rejected TriHealth's attempt to raise a newly-asserted relevancy objection as "too little too late." (Doc. 98 at 10).

Although the Court's December 2 Order declined to reconsider relevancy with respect to its prior order compelling underlying data and analyses by third-party valuation consultants, the undersigned now concludes after further review that the overall relevance of any additional FMV information not previously compelled would be minimal, while the burden to the Defendants would be exorbitantly high and invade the province of attorney-client privilege. This should come as no surprise to Plaintiff. The December 2, 2019 Order previously warned:

> It appears that a subpoena was issued to the law firm that seeks the same information that has been compelled by this Order. Without pre-judging the issue presented here prior to full briefing (should Plaintiff continue to seek to compel compliance with the subpoena), the undersigned notes that the issuance of subpoenas to a party's law firm and/or attorney is highly unusual.

(Doc. 98 at n.1). In an Order filed December 9, 2019, the undersigned wrote further:

> [A]t some point, discovery must end. The undersigned has compelled much of the FMV-related discovery that Plaintiff has sought in this case based upon the broad scope of discovery and established (albeit limited) relevance of the documents sought, but there are limits to the scope of discovery. Plaintiff is rapidly approaching those limits if he has not already reached them.

(Doc. 105 at 4). In her opposition to Plaintiff's motion to compel her deposition, Attorney Catherine Dunlay states that she continues to represent TriHealth to this day, highlighting the extent to which compelling her deposition could interfere with the existing attorney-client relationship.

The Court has carefully reviewed and considered the written arguments presented and all authorities cited therein. In addition to finding many of the arguments contained in the memoranda in opposition to Plaintiff's motions to be persuasive, the undersigned emphasizes that *in this instance*, unlike in the prior related FMV dispute, TriHealth and the attorneys from whom discovery is sought have carried their burden to prove both the minimal relevance and the existence of privilege as to the additional FMV information. For the reasons discussed below, the undersigned also will strike Plaintiff's recently filed "second motion to compel" the third parties to produce additional FMV information.

### B. The Parties' Opposing Rule 30(b)(6) Motions

On November 8, 2019, Plaintiff served TriHealth with a notice to produce one or more witnesses for a Rule 30(b)(6) deposition three weeks later on Monday, December 2 – the final date of the discovery period at that time. (Doc. 97). Plaintiff maintains that TriHealth unilaterally and without prior notice cancelled the scheduled deposition the Friday before the deposition was scheduled. On Sunday, Plaintiff filed a motion to compel TriHealth to submit to the Rule 30(b)(6) deposition, along with a request for monetary sanctions. (Doc. 97). On Monday, December 2, TriHealth filed its own motion seeking a

protective order to limit the scope of the previously noticed deposition.  (Doc. 99).  Both parties' motions have been exhaustively briefed.[2]

Plaintiff's motion contains many serious accusations against TriHealth and its counsel, suggesting that they have presented witnesses "who lied under oath, and generally conducted this litigation in bad faith."  (Doc. 97 at 2).  The undersigned notes that some of the email correspondence between counsel reflects a similar strident and uncivil tone.  Plaintiff accuses TriHealth of unilaterally canceling a properly noticed Rule 30(b)(6) deposition one business day before it was scheduled without notice or any remotely adequate explanation.[3]  However, according to TriHealth, it refused to proceed only after Plaintiff's counsel "flatly refused to discuss any compromise or narrowing of the 30(b)(6) Notice issues in any way."  (Doc. 109 at 1-2).  In reply, Plaintiff insists that "no compromise was offered."  (Doc. 113 at 3).  Instead of dwelling on the hypothetical details of a one-minute telephone conversation[4] that the undersigned was not privy to, the Court will assume that neither party was entirely blameless.

In a related procedural argument, Plaintiff opposes Defendant's motion for a protective order because TriHealth failed to include a more formal "certification" that "the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the [discovery] dispute without court action."  *See* Rule 26(c).  Rule 37(a), Fed. R. Civ. P. contains identical language, and Local Rule 37.1 similarly prohibits the filing of any discovery motions "unless the parties have first exhausted among

---

[2]Although the memoranda and exhibits to many of the pending motions invoke a sense of overkill, Plaintiff's response to Defendant's motion for protective order is particularly notable, weighing in at 1,931 pages.
[3]The email correspondence attached to Plaintiff's motion contains emails dated the day before Thanksgiving, seeking a telephonic conference with Plaintiff's counsel to discuss his Rule 30(b)(6) request. Due to the holiday, Mr. Byrne was not available until Friday, November 29.
[4]Attorney Byrne attests that the conversation lasted approximately one minute.

themselves all extrajudicial means for resolving their differences."  Considering that Plaintiff filed his own motion to compel the Rule 36(b)(6) deposition, that Defendant's motion recites that it "attempted to resolve this dispute through extrajudicial means" and the painfully obvious inability of the parties to resolve this dispute, the undersigned declines to deny TriHealth's motion for protective order based upon the lack of a formal "certification."

Moving to the merits, TriHealth complains that the Rule 30(b)(6) notice, which contains 42 separate areas of inquiry not including subparts, is excessive.  TriHealth points out that Plaintiff has already deposed 13 TriHealth witnesses, including "TriHealth's CEO, current and former COOs, the General Counsel and Chief Legal Officer, the current and former Chief Medical Officers, the President of Good Samaritan Hospital, the Chief of Surgery at Good Samaritan Hospital, the Head of Good Samaritan Hospital's Quality Review Committee, multiple executives formerly in charge of TriHealth's Orthopedic Group, and multiple executives formerly in charge of TriHealth Physician Partners, the entity that formerly employed Plaintiff."  (Doc. 109 at 1).  In addition to the TriHealth witnesses, Plaintiff also has deposed five Mayfield Clinic witnesses.  In TriHealth's view, the Rule 30(b)(6) Notice, with its scores of separate topics of inquiry "would be needlessly cumulative, burdensome, out of proportion to [the] needs of a single-plaintiff employment case, and may be fairly viewed as a means to harass TriHealth."  (*Id.* at 2).

TriHealth concedes that Rule 30(b)(6) does not prohibit deposing a fact witness in his or her individual capacity and subsequently deposing the same witness in a 30(b)(6) representative capacity.  However, the fact that discovery rules do not prohibit this practice is not the same as granting carte blanche to do so.  Instead, in instances when

a Rule 30(b)(6) deposition would be needlessly cumulative or duplicative, courts will exercise their discretionary authority to limit or prevent such depositions. Here, TriHealth urges this court to eliminate or at least limit the Rule 30(b)(6) deposition, arguing that Plaintiff is seeking "two bites at the apple…as to a large group of former and senior TriHealth leaders who have already been deposed on most of the numerous topics" listed. (Doc. 109 at 5). TriHealth further maintains that as to some topics, there is no need for *any* deposition testimony because the referenced records speak for themselves. *See, e.g.*, Doc. 109 at 5, citing topics that seek testimony on the "total number of wRVUs produced by Shahbabian during calendar year[s]" of 2014, 2015, 2016, 2017 and 2018 as well as testimony to explain "nearly 2,000 pages of physician compensation records produced by TriHealth.").

Plaintiff counters that the Rule 30(b)(6) topics are not duplicative, despite the prior depositions of so many executives, because TriHealth has not specifically identified which of those witnesses "provided binding corporate answers" as opposed to merely testimony in their individual capacities. (Doc. 113 at 3). Plaintiff objects to TriHealth's reference to Plaintiff's own alleged recalcitrance in the production of discovery as "spurious" and irrelevant. Plaintiff's counsel also takes umbrage at the assertion that he "refused to produce" certain documents, calling that statement "an outright fabrication of the existing record" that supports sanctions.

The undersigned has reviewed each of the topics included in Plaintiff's Rule 30(b)(6) notice. Considering the discovery undertaken to date, and further considering the parties' arguments including on issues of relevance and the burden to TriHealth, the Court will exercise its discretion to grant Plaintiff's motion only in part. Consistent with

the rulings set forth in this Order, TriHealth's corresponding motion for a protective order will be denied as moot. Although the Court has fully considered the parties' memoranda and attached exhibits, the undersigned finds it necessary to discuss only a handful of the Rule 30(b)(6) topics.

Plaintiff seeks testimony about "[t]he factual basis upon which TriHealth relies" to assert its various affirmative defenses as well as "[t]he material facts upon which TriHealth" bases its counterclaim of unjust enrichment. TriHealth protests that inquiry into which facts are *material* to an affirmative defense is a legal question to which no lay witness could reasonably testify. *See generally*, *Concepts, Inc. v. Convatec, Inc.*, 268 F.R.D. 255, 260 (M.D.N.C. 2010). TriHealth argues that asking for the "factual basis as a disguise for the corporate representative to elaborate on legal theories of the case is an improper use of a 30(b)(6) deposition" and that no corporate representative "could effectively explain the 'factual basis' for any of the legal defenses and counterclaim asserted" because such an inquiry requires "legal training and an understanding of the elements of each claim." (Doc. 99 at 7).

TriHealth may have a valid point if Plaintiff were asking for a corporate representative to testify extensively about the legal theories or elements of its counterclaim or defenses. And to the extent that Plaintiff seeks a representative to testify about his or her view of the legal "materiality" of the underlying facts in Topic 32, TriHealth's motion is well-taken.[5] However, this Court will not assume that inquiries into facts underlying TriHealth's affirmative defenses and counterclaim is merely a pretense

---

[5]TriHealth argues that "the material facts upon which TriHealth's counterclaim for unjust enrichment is based are detailed in the amended counterclaim. (Doc. 88 at ¶¶5-31). Be that as it may, Plaintiff is not required to merely accept TriHealth's allegations but is entitled to discovery concerning the alleged facts.

for asking lay witnesses to espouse on TriHealth's legal theories. The facts underlying a party's claims and defenses are at the heart of all discovery, as "nonprivileged matter that is relevant to any party's claim or defense…." Fed. R. Civ. P. Rule 26(b)(1); *see also Majestic Building Maint., Inc. v. Huntington Bancshares Inc.*, 2018 WL 3358641 (S.D. Ohio July 10, 2018); *Smith v. General Mills, Inc.*, 2006 U.S. LEXIS 19093, 2006 WL 7276959 (S.D. Ohio April 13, 2006). To the extent that TriHealth believes that written discovery might have been more convenient or less burdensome and expensive, TriHealth's prior discovery responses were sufficiently incomplete that the Rule 30(b)(6) topics are neither cumulative nor duplicative. (*See generally* Doc. 106 at 5, internal citations omitted).

Plaintiff's Motion to Compel also will be granted for topics relating to wRVU information on which TriHealth Executives either were "or could have been" previously deposed. (Doc. 112 at 4). Although TriHealth cites to a handful of pages of deposition transcripts, TriHealth has failed to supply this Court with those pages.[6] In addition, Plaintiff points out that two of the referenced witnesses could not provide relevant information due to the dates of their employment with TriHealth and corresponding limitations in their knowledge. As the party seeking a protective order, TriHealth has the burden to prove that the otherwise relevant topics of inquiry are cumulative or duplicative. Because TriHealth failed to carry its burden, Plaintiff's motion to compel will be granted.

---

[6]In support of its argument, TriHealth includes only one quotation from the transcript of James Koch within the body of its motion for protective order. (Doc. 99 at 5-6)." In that quotation, the deponent testified that either TriHealth's former COO or a third party hired by TriHealth determined the baseline wRVU rates under Plaintiff's contract. The quoted transcript does not prove that Plaintiff has obtained the requested information, nor does it show that TriHealth has no other witnesses who could provide the information. Therefore, the topic is not cumulative or duplicative.

The undersigned disagrees with TriHealth that the referenced (and heavily redacted) documents that form the subject of Topic 33 "speak for themselves." (Doc. 109 at 5). Topic 40 is a bit of a toss-up: It is relevant and discoverable but TriHealth cannot be compelled to produce a witness to testify if no one has knowledge. The court finds a similar ambiguity in the record concerning Topic 41, but will conditionally deny Plaintiff's motion concerning that topic, pending confirmation that no one at TriHealth has any information concerning authorship and clarification from TriHealth concerning the location or source of the highly relevant document.

Plaintiff's Motion to Compel Topics 18-19, 26, 28, 35, 36, 37, 38, 39 (additional FMV information) will be denied. All other rulings on specific topics require no further explanation and are granted.

### C. TriHealth's Motion to Compel Additional Written Discovery

On December 2, 2019, in addition to moving for a protective order concerning the Rule 30(b)(6) deposition, TriHealth moved to compel Plaintiff to produce additional discovery. Although the motion filed on December 2 sought to compel multiple documents, TriHealth concedes in its reply memorandum that the only remaining issues relate to Plaintiff's medical records and financial records. (Doc. 116 at 1).

### 1. The Requirement to Seek Extrajudicial Resolution

Plaintiff first objects to TriHealth's motion for the same reasons that Plaintiff objects to the motion for a protective order concerning the Rule 30(b)(6) deposition – because TriHealth has not included a formal "certification" that it has exhausted extrajudicial efforts to resolve the issues presented in the motion to compel. TriHealth argues that the various extrajudicial efforts it made to resolve the dispute prior to filing the motion are sufficient.

14

The undersigned only partially agrees. The Motion to Compel includes correspondence concerning the contested discovery, with a focus on the medical records. However, TriHealth's acknowledgement in its reply memorandum that a number of issues have been resolved suggests that TriHealth could have done more to narrow the dispute before filing a formal motion. Still, considering the demonstrated inability of the parties to resolve issues concerning medical records, the undersigned will address that portion of TriHealth's motion.[7]

On the other hand, TriHealth has offered little evidence of extrajudicial attempts to resolve issues concerning contested financial records. TriHealth served its requests for financial records on October 24, 2019 and sent a single October 25, 2019 letter explaining its basis for the requests in response to Plaintiff's inquiry. TriHealth made no attempts at follow-up communications of any kind either before or after Plaintiff responded to the requests on November 20.[8] Based upon the inadequate extrajudicial attempts to resolve this dispute, the undersigned will DENY that portion of TriHealth's motion. The undersigned also will strike TriHealth's recently filed duplicative motion.

### 2. Relevant Medical Records

The dispute concerning medical records began with TriHealth's request that Plaintiff execute a broad release "for each doctor, hospital, physician, psychiatrist, psychologist, counselor, social worker, or any other medical or healthcare facility or practitioner which may have provided services to Plaintiff since 2011." (Request for

---

[7]TriHealth argues in another (duplicative) motion to compel that Defendant "had no reason to believe" the parties would be able to resolve the dispute concerning financial information without Court intervention. (Doc. 121 at 2). TriHealth's reservations about the efficacy of trying to communicate with Plaintiff's counsel to resolve disputes extrajudicially do not excuse the necessity of making a good faith attempt.
[8]Plaintiff's response in opposition to the motion to compel inaccurately states that TriHealth never sought any of the requested records prior to filing its motion.

Production 13).  Plaintiff objected to executing any release and stated that he instead would seek out and provide only those records that Plaintiff deemed to be "relevant." Plaintiff repeatedly points out that many of his medical records are maintained by TriHealth or relate to physicians employed by TriHealth; however, Plaintiff does not claim that the Defendant has any particular ability to access his confidential records in the absence of releases.

By the time Plaintiff was deposed on November 26, 2019, he had provided 490 pages of records from his primary care physician, Dr. Bort, and 18 pages (total) of records from Drs. Diehl and Hughes.  TriHealth complains that it was hampered in its ability to depose Plaintiff based upon his inadequate production.  Plaintiff disputes that contention and insists that he has now produced all "relevant" records, noting he has forwarded "over 2,000 pages" including more than 1600 pages produced on December 23, 2019. Ambiguously, Plaintiff also states that he "continues to produce medical records" as those records are received by him.

Plaintiff also questions the temporal scope of TriHealth's requests, arguing that his ADA and handicap discrimination claims (for knee and cardiac issues) date only to 2017 and 2018.  Although the Court will limit the temporal scope to 2011, Plaintiff's medical records are relevant not only to Plaintiff's ADA claim that he is a "qualified individual," but to his general competency as a surgeon as well as to issues concerning his credibility and damages.  Factual disputes concerning Plaintiff's surgical competency are at the center of this lawsuit.  Plaintiff's complaint alleges that TriHealth began questioning his competency as a surgeon as early as March of 2015, and that TriHealth eventually limited his privileges and forced him to curtail his surgical practice.  Plaintiff's assertion of

damages is highly dependent upon his contention that he remained fully competent to perform both a high volume of neurosurgeries and high acuity neurosurgeries throughout the term of his employment.

As TriHealth points out, it appears that Plaintiff did not even request many of his records until December 3 - the day after TriHealth filed its motion to compel. Plaintiff received those records on December 16 and forwarded more than 1600 pages to TriHealth's counsel on the date that Plaintiff responded to TriHealth's motion. The record reflects an inadequate discovery response to legitimate requests for records concerning mental and physical conditions for which Plaintiff has undergone treatment.[9]

For example, Plaintiff's complaint alleges that TriHealth insisted in April 2015 on a "bogus psychiatric evaluation" and that Plaintiff responded during that same meeting that he had already undergone a "medical evaluation" that he "passed." (Doc. 21 at ¶30). It does not appear that Plaintiff has identified that "medical evaluation." In another example provided in TriHealth's reply brief, TriHealth asserts that Plaintiff "testified that he underwent hernia surgery in December 2014 and was prescribed significant time off in addition to painkillers" but has failed to produce the related records. (Doc. 116 at 3). In a surreply, Plaintiff states that the referenced records were included in the large document production made on December 23. If Plaintiff has now produced these documents, a repeat production will not be compelled.[10]

---

[9]Plaintiff states in his responsive memorandum that he is "researching" whether Defendants committed any HIPPA violations by referencing his medical conditions in its publicly filed motion to compel. Plaintiff has referenced many of the same medical conditions in other publicly filed documents in this record.

[10]Plaintiff complains that TriHealth misrepresents his deposition testimony to this Court, because he testified that he "really didn't take any" time off for the hernia surgery or for any other medical procedure, including open heart surgery. In other arguments, Plaintiff accuses TriHealth witnesses of lying under oath, implying that TriHealth and its counsel have been complicit in the intentional presentation of such witnesses. (Doc. 97 at 2). The undersigned declines to enter into this thicket, as this dispute is not the time or place for argument about the meaning and veracity of witness testimony.

TriHealth's motion also cites missing records from Drs. Chaudry and Kramer. In his response, Plaintiff now states that he sent letters to those two physicians in July but that on some unspecified date, those letters "were returned…stating that they did not have responsive records," (Doc. 111 at 3, n.1). Unfortunately, Plaintiff's counsel did not transmit that information to defense counsel and instead communicated on November 4, 2019 that Plaintiff was continuing to seek "additional documents regarding the knee and heart surgery once they are obtained from Drs. Kramer and Smith [sic] at TriHealth." In his sur-reply, Plaintiff clarifies that Dr. Kramer did not provide any treatment to Plaintiff, calling into question why counsel sought records from him. In the same sur-reply, Plaintiff states that he recently produced records from Dr. Chaudry's treatment dated June, August, and October 2019, notwithstanding Dr. Chaudry's representation that he did not possess any records.

Plaintiff also underwent a psychological examination by a clinical psychologist, Dr. Diehl, on April 24, 2015 which has not been produced. However, Plaintiff states that Dr. Diehlhas has indicated that he does not possess "any records for the April 24, 2015 date." (Doc. 111 at 3). It remains unclear whether some other provider may have retained records from Plaintiff's psychological evaluation (whether on April 24 or some other date), or whether Dr. Diehlhas has any additional records. In a response to Plaintiff's surreply filed on January 21, 2020, TriHealth complains that Plaintiff appears to have "cherry-picked which physicians would be solicited for records, perhaps in the hope that records from Good Samaritan Hospital could serve in place of actually seeking records from all of Plaintiff's various treating physicians." (Doc. 124 at 3). Based on the Good Samaritan

records not requested by Plaintiff until December 3 and forwarded to TriHealth on December 23, TriHealth seeks records from multiple individual providers.

The undersigned will direct Plaintiff to promptly execute individual releases so that TriHealth can obtain the records directly from those providers. It is true that courts have limited medical releases when the releases sought are well outside the boundaries of the issues presented in the lawsuit. And several courts have concluded that Rule 34 does not mandate the execution of medical releases even though such releases clearly are "the most expeditious and most efficient way for the opposing party to obtain pertinent medical records." *Moody v. Honda of America Mfg., Inc.*, 2006 WL 1785464, at *4 (S.D. Ohio 2006). Still, the fact that releases are not mandated by Rule 34 does not mean that they are never appropriate. In the cases cited by Plaintiff, the courts have emphasized that when a plaintiff fails to obtain or withholds medical records on grounds of relevancy or privilege, he or she should, "[s]ubject to an attorneys' eyes only protective order, …indicate the nature of any medical records not produced or for any redactions in medical records produced and state the reason for not producing them." *See Ward v. ESchool Consultants, LLC*, 2011 WL 4402784, at *1 (S.D. Ohio 2011). Plaintiff's production of his medical records to date has been woefully inadequate. In addition to failing to timely seek relevant records, he has failed to comply with basic obligations to explain the nature of any medical records not produced and the basis for any redactions.

The resolution of discovery disputes ultimately requires the exercise of judicial discretion. In an effort to bring this portion of the parties' dispute to a close, the Court will require Plaintiff to execute full releases for TriHealth to obtain any additional medical records dating back to 2011 directly from Dr. John Michael Smith, Dr. Mark Schrand, Dr.

Freidoon Ghazi, Dr. Niharika Joolukuntla, Dr. Michael Policastro, Dr. Melissa Felinski, and Kristi White (PT). In light of inconsistencies concerning records that may be in the possession or control of Drs. Kramer, Diehl, and Hughes, Plaintiff also will be required to execute new releases as to those providers. Last, Plaintiff is warned that he may need to execute additional medical releases for records dating back to 2011 if additional providers are located with relevant records.

### 3. Medication Records

TriHealth also seeks all records relating to medication Plaintiff has taken in the last 10 years. In response, Plaintiff initially referred only to the records of his primary care physician, dating to 2011. (Doc. 111 at 5). In Plaintiff's sur-reply, he adds that any additional medications prescribed during his inpatient and outpatient procedures can be found in the recently produced Good Samaritan Hospital records.

Plaintiff complains that TriHealth seeks irrelevant information and argues that having him "rack his brain for determining when he may have taken Tylenol or any other over the counter medication…has nothing to do with this case." (Doc. 111 at 5, citing 11/4/19 correspondence). With respect to over-the-counter ("OTC") drugs in particular, Plaintiff states that he has no records for the OTC medications he may have taken over the past 10 years.

Based upon the careful wording of Plaintiff's response, it is clear that additional medications may have been prescribed by other providers than Dr. Bort. In light of newly discovered information that Plaintiff routinely fills prescriptions at the same pharmacy, the Court will grant TriHealth's request to compel Plaintiff to execute a release for his pharmacy records dating back to 2011.

### 4. The Financial Records

The undersigned will not fully delve into the merits of the parties' dispute over Plaintiff's financial records but will offer some guidance to help the parties resolve this dispute extrajudicially.

At the outset, the Court does not agree with TriHealth that the entirety of a party's financial records are relevant to determine whether the party has sufficient assets to satisfy a potential judgment. To the extent there is a dispute about assets, that dispute can be adequately addressed through a judgment debtor exam or other post-judgment discovery. At the same time, some additional financial records are relevant to Plaintiff's claim of unjust enrichment, for which he seeks $60 million in damages based upon his position that TriHealth fraudulently induced him to give up a lucrative solo practice. The basis for Plaintiff's damage claim is an appropriate subject of discovery. To the extent that Plaintiff claims he lost income by giving up his solo practice, tax returns prior to 2014 would appear relevant. Advocating for much broader financial records, TriHealth argues that Plaintiff "intends to attempt to put his intended retirement date in dispute as part of his claims for liability and damages against TriHealth." (Doc. 121 at 4). The undersigned agrees that Plaintiff's retirement date is in issue, both with respect to his age discrimination claims and alleged lost income during the full term of the employment contract. However, the Court encourages the parties to put greater effort into resolving their remaining disagreements about the scope of TriHealth's unusually broad requests.

### III.    Conclusion and Order

Consistent with the above analysis**, IT IS ORDERED**:

1. Plaintiff's motion to compel the production of documents from Bricker & Eckler, motion to compel the deposition of Catherine T. Dunlay (Docs. 92, 96) are DENIED;

2. Plaintiff's motion to compel TriHealth to produce a Rule 30(b)(6) witness or witnesses and request for sanctions (Doc. 97) is GRANTED only in part:

   a. The motion is GRANTED as to Topics 3-17, 20-25, 27, 29-34, 40, and 42;

   b. The motion is DENIED as to Topics 18-19, 26, 28, 35-39, and is conditionally DENIED as to Topic 41;

   c. Plaintiff's request for sanctions is DENIED;

3. TriHeatlh's motion for a protective order to prevent the Rule 30(b)(6) deposition (Doc. 99) is DENIED as moot;

4. TriHealth's motion to compel Plaintiff to produce additional discovery (Doc. 101) is GRANTED in part as to the medical records referenced *infra*, but is DENIED in all other respects;

5. Having acknowledged that its recently filed motion to compel additional financial records is duplicative, TriHealth's latest motion to compel (Doc. 121) is STRICKEN;

6. In view of the above discussion concerning the scope of additional discovery relating to FMV, Plaintiff's latest motion to compel such information from non-parties (Doc. 122) also is STRICKEN at this time;

7. <u>Neither party may file any additional motion relating to discovery without first contacting the deputy clerk to the undersigned to seek an informal telephonic conference</u>.  Contact with the deputy clerk may be initiated only after

extrajudicial efforts to resolve the dispute have been _fully_ exhausted, including face-to-face and/or telephonic conferences to narrow any remaining disputes. If deemed appropriate, the undersigned may require counsel to appear in person for any future informal discovery conference(s) to be scheduled rather than conducting the conference by telephone.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge